NOT DESIGNATED FOR PUBLICATION

No. 112,499

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of:
NANCY BUDY,
*Appellee*,

and

TIMOTHY BUDY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAN K. WILEY, judge. Opinion filed October 23, 2015. Affirmed.

*Michael E. Whitsitt* and *Rachel C. Whitsitt*, of Whitsitt & Whitsitt, of Westwood, for appellant.

*Lawrence P. Henderson*, of Murray, Tillotson & Burton, Chartered, of Leavenworth, for appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and JOHNSON, S.J.

*Per Curiam*:  The district court granted Nancy Budy a divorce from Timothy Budy. After a subsequent evidentiary hearing, the court construed the parties' prenuptial agreement and divided their property. Timothy appeals from that division. He argues that the court erred when it construed the prenuptial agreement term "total combined assets of the parties" to mean the total combined assets of the parties and then awarded Nancy, per the terms of the agreement, 50 percent of that total. Timothy contends that "total combined assets of the parties" in the context of the agreement only includes items the parties bought together. We disagree with Timothy and affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

After entering a prenuptial agreement, Timothy and Nancy married on July 2, 1988. On March 1, 2012, Nancy filed her petition for divorce. On August 8, 2013, the district court granted the divorce but did not divide the property. On October 7, 2013, the district court conducted an evidentiary hearing on property division. The parties urged radically differing constructions of the prenuptial agreement which, of course, led to vast differences between the property division each party argued was appropriate.

Because they are at the center of the parties' dispute, we will set out the relevant terms of the prenuptial agreement. Paragraph 1 provides that each party would list the property each brought into the marriage in an exhibit attached to the agreement, which list each party completed. Paragraph 2, in relevant part, states:

"2. That following the execution of this agreement and the appending of Exhibits as attached, the parties hereto agree, that all personal property and real estate and money derived from the sale of that real estate, as listed on such attached exhibits, as well as income derived therefrom, shall continue to remain the separate property of each of the parties hereto, free and clear of any claim of the other party, and that said property will remain the separate property of each of the parties, and that should the marriage be dissolved, each will be entitled to remove his own separate property without claim or interference from the other, and the other party will have no legal claim or right, title or interest in said property."

Paragraph 4 states:

"4. The parties further agree that any and all properties acquired while the parties are married, shall become the sole property of that party making the acquisition, unless an express intent to the contrary is manifested. In the event that any property is acquired by the parties jointly during the marriage, then that property so acquired shall be considered joint property and shall pass to the survivor in case of death of the other party."

2

Finally, relevant to the issues here, paragraph 6 states:

> "6. In the event of dissolution of the marriage of the parties, each of the parties hereto, agrees that they will retain the property each held at the time of the marriage, free and clear of any right, title or interest in the other, and that in lieu of alimony, Nancy C. Judy, agrees to accept the total sum of eleven percent (11%) of the total combined assets of the parties in the event that the marriage should fail within one (1) year. For each additional year that the parties are married, Nancy C. Judy, agrees to accept in lieu of alimony, an increase of two percent (2%) per year of the total combined assets of the parties until a maximum of fifty percent (50%) of the total combined assets of the parties is reached."

Exhibit A of the prenuptial agreement identified Timothy's premarital property ("separate property" under paragraph 2), which included a residence on a 16-acre tract of land at 9545 Parallel, Kansas City, Kansas, various investments and notes, a TWA pension plan, and certain household furnishings. Exhibit B identified Nancy's separate property, which included a residence at 2718 N. 45th Street, Kansas City, Kansas, some minimal investments, and certain household furnishings. Timothy's list showed $128,750 equity in his separate property and Nancy's showed $20,900 equity in hers.

According to the testimony at the evidentiary hearing, the parties initially lived in Timothy's Parallel property. Nancy's property was retained, at least for a while, as rental property. In 1990, the parties refinanced the loan on the Parallel property, with Nancy named as a joint tenant on the new title and co-debtor on the new mortgage. Over the years the parties had 3 children, with the youngest born in 1996. Timothy continued to work as an airplane mechanic.

Timothy testified that Nancy no longer owned her separate N. 45th Street property. He said she was preparing to sell the property at a loss. Timothy told Nancy he would take responsibility for it and "it was to be mine." He remodeled Nancy's property

3

and sold it in 2004 for $72,000, although he said he only realized a $30,000 profit. He described what he eventually did with the money:  "I put it in my account . . . [m]y Credit Union account and I spent it." He acknowledged that Nancy complained to him that he had taken her money. Nancy testified she did not receive any of those proceeds.

Timothy testified that in 2005 he sold the parties' jointly owned Parallel property for 1 million dollars to Schlitterbahn for its planned water park. He claimed he cleared $850,000 on the sale. Timothy said that in 2006 he spent around $300,000 from that money to acquire 76 acres and a residence ("the farm") at 16551 Hollingsworth Road in Leavenworth County. He acknowledged that he and Nancy owned the property as joint tenants and that each of them was obligated on the mortgage on the property. He claimed he was told he was required "by law" to put Nancy's name on the title. When Nancy's attorney asked where the rest of the $850,000 went, Timothy replied:  "The same place the other million dollars I earned went. We spent it on the family."

Thus, all the real estate listed in the prenuptial agreement exhibits had been sold. There was extensive testimony about the parties' financial interests and personal property and the value of such property for division purposes. Each party justified the party's requested division by contending it was consistent with the prenuptial agreement.

Nancy asked the judge to award her 50 percent of all of the assets owned by the parties. She recognized that she had waived her claim to alimony or maintenance in the prenuptial agreement. Nancy explained that the basis for her request was spelled out in paragraph 6 of the agreement:

> "Umm, I thought it was pretty obvious. Umm, that it was 11 percent. I would accept in lieu of alimony 11 percent of our combined assets if our marriage failed within one year and it clearly said two percent per year after that with a 50 percent, umm, you know, after—as the maximum on that."

4

Timothy also acknowledged that the parties' rights were governed by the prenuptial agreement. In explaining his justification for the property division he sought, he claimed that Nancy was only entitled to 50 percent of the assets that the parties purchased together. Timothy confirmed that he had insisted on a prenuptial agreement and had his attorney draft it because "my understanding was people get divorced after two or three years and the wife gets half of everything and that's what you hear out in public." He wanted to avoid that and "calculated it so in 20 years she would get half of our combined assets . . . ." "My intent was to guide the Judge when he separated the, the combined assets to not give her 50 percent of our combined assets after four or five years." Further, he stated "—when I edited this I'm—I put in there, because I did not want to pay her alimony for the rest of my life. I told the lawyer to put in, ahh, in lieu of alimony." He protested, though, that "combined did not include the house."

He maintained that property he owned before the marriage, or property purchased with the proceeds from the sale of premarital property, was "separate property" under paragraph 2 and remained his alone. He explained the agreement's reference to combined property in paragraph 6: "That is what I put in there. Combined is what is not separate . . . ." He stated further: "I'm asking the court to read the prenup. It states that everything that is mine is mine. The only combined items are what you buy together, what you own together. The food, the furniture." Because the farm was purchased using, at least in part, proceeds from the Parallel property sale, Timothy insisted that the farm must be set over to him.

After taking the matters under advisement, the district court announced its decision to the parties in open court. It first determined that the prenuptial agreement was unambiguous. It held that the term "total combined assets of the parties" used in the agreement referred to all of the parties' assets. It further held that the farm was joint, not separate, property as it had been acquired by the parties during the marriage and was

5

titled in joint tenancy. The district court then divided the parties' property. It set aside to each party that which the court considered separate, but it used the combined values of all the parties' property, joint and separate, to determine the 50 percent division of assets Nancy was entitled to in lieu of alimony pursuant to paragraph 6. To effect the 50-50 division of property the district court ordered that the jointly owned farm be sold and the proceeds apportioned according to the court's specific equalizing directions. The district court subsequently denied Timothy's motion to reconsider. Timothy timely appeals.

ANALYSIS

Timothy argues the district court erred in dividing the parties' property. He contends that the district court misinterpreted the prenuptial agreement when it determined that Nancy was entitled to 50 percent of the combined value of all the parties' assets rather than of just their joint assets. In challenging the court's ruling, Timothy asserts that the prenuptial agreement is ambiguous because the agreement did not define the term "total combined assets of the parties." He also argues that the court should have found that the farm was his separate property under paragraph 2 of the agreement because it was purchased in part with the proceeds from the sale of his separate Parallel property, rather than finding it was joint property under paragraph 4.

The legal effect of a written instrument is a question of law. We may construe the prenuptial agreement and determine its legal effect regardless of the construction made by the district court. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). When interpreting written contracts, the primary rule of construction is to ascertain the parties' intent. If the terms of the contract are unambiguous, the parties' intent is to be ascertained from the contract language without applying rules of construction. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

6

The question of whether a written instrument is ambiguous is a question of law subject to de novo review. *Waste Connections of Kansas, Inc.*, 296 Kan. at 964. A written instrument will not be found to be ambiguous unless two or more meanings can reasonably be construed from the contract. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 313 P.3d 808 (2013). The court will not strain to find an ambiguity where, in common sense, there is none. *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1159, 179 P.3d 1104 (2008). Additionally, an interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. *Waste Connections of Kansas, Inc.*, 296 Kan. at 963. A contractual provision is not ambiguous merely because the parties disagree over its meaning. See *ARY Jewelers v. Krigel*, 277 Kan. 27, 34-35, 82 P.3d 460 (2003).

*"Total combined assets of the parties"*

Timothy contends that the term "total combined assets of the parties" in paragraph 6 of the prenuptial agreement refers only to the parties' joint assets purchased during the marriage with the parties' joint funds. As such, Timothy claims that the district court should have set aside to him all of his "separate" property, including the farm, without aggregating all the parties' assets to calculate Nancy's share.

The prenuptial agreement uses three terms in describing the parties' property. First, paragraph 2 defines "separate property" as the premarital property listed in each party's exhibit as well as the proceeds from the sale of listed premarital real estate and income from such proceeds. Next, paragraph 4 provides that property acquired solely by one party is the property of the acquiring party, but property acquired jointly is "joint property." Finally, paragraph 6 employs the term "total combined assets of the parties" to

7

determine Nancy's entitlement to a portion of those assets, based on graduated percentages up to 50 percent depending on the duration of the marriage, in exchange for her contractual waiver of alimony upon divorce.

Although the term "total combined assets of the parties" is not defined in the prenuptial agreement, it is not ambiguous. The use of that term in paragraph 6, rather than the term "joint property" Timothy would have us replace it with, clearly indicates an intent to divide more than just the parties' jointly acquired property. Had the parties intended that Nancy would only be entitled to a percentage of the parties' joint property in the event of divorce, that is what the agreement would have said. After all, that very term is defined and employed in paragraph 4 of the agreement.

The meaning of the term "total combined assets of the parties" is readily gleaned from its words. The phrase is not made up of terms of art nor is the phrase itself a legal term of art. The words of the phrase have common, ordinary usages. In this case three types of property are described in the agreement: Nancy's separate property, Timothy's separate property, and jointly owned property. "Total" clearly means the entirety of the parties' assets. "Combined" clarifies that regardless of how those "total" assets of the parties were acquired or titled, separately or jointly, they are to be added together. Timothy's argument that "total combined assets of the parties" refers to only one type of property subject to the agreement, joint property, is not reasonable: it ignores both "total" and "combined" as modifiers of "assets of the parties." See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963.

Because the terms of the contract are unambiguous, we must ascertain the parties' intent from the contract language without applying rules of construction. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963. We see from the four corners of the agreement that it allowed each party to retain as separate property that which the party brought to the marriage. However, it allowed the parties to acquire a joint asset even if

8

the funds used to purchase it had originally been separate. It eliminated Timothy's exposure to the payment of alimony. It fostered a lengthy marriage by limiting Nancy's property division entitlement upon an early divorce, and it capped Nancy's such entitlement to a division of the parties' total combined assets at 50 percent even if the marriage lasted more than 21 years. Neither the phrase "total combined assets of the parties" nor the agreement when read as a whole is ambiguous.

The district court properly construed this term to provide that Nancy was entitled to 50 percent of the combined value of all the parties' joint and separate assets.

*Ownership of the farm*

Timothy also argues that the district court erred in determining that the farm was joint property rather than his separate property. This is a distinction with little meaningful difference, as we have decided that even if the farm was his separate property it would still be subject to division as part of the "total combined assets of the parties." Nevertheless, we will consider it. Timothy claims there was insufficient evidence presented at trial to show that the farm was titled in joint tenancy because the deed was not admitted into evidence. But even if such a deed had been admitted, Timothy contends that the joint tenancy deed only created a legal form of ownership that was overridden by the specific terms of the prenuptial agreement which identified the equitable owner of each property.

Whether the deed was actually in evidence does not matter. There was no dispute at trial that the farm was titled in joint tenancy. In fact, Timothy testified that the property was titled in joint tenancy. No additional proof of title was necessary.

In further challenging the court's ruling, Timothy notes that the prenuptial agreement provided that each party's separate property was to remain separate in the

9

event of divorce and, specifically, that paragraph 4 provided that any property acquired during the marriage became the sole property of the party making the acquisition. Timothy suggests that because the farm was purchased, in substantial part, with the proceeds from the sale of the Parallel property, the farm constituted his separate property despite the joint tenancy designation. As support for his argument, Timothy relies on *King v. Estate of King*, 25 Kan. App. 2d 335, 962 P.2d 1118 (1998). In that case, this court determined that the parties' prenuptial agreement controlled the ultimate disposition of real estate even though the parties had caused the property to be titled in them as joint tenants with the right of survivorship. The *King* court stated:

> "When parties contract in a prenuptial agreement for the disposition of specific real estate in the event of the death of either or both parties, the prenuptial agreement controls the disposition of the real estate in question, despite the fact that the parties later deeded the property to themselves as joint tenants with the right of survivorship and not as tenants in common." 25 Kan. App. 2d 335, Syl.

*King* is readily distinguishable on its facts. There, the parties' prenuptial agreement confirmed their intention to equally contribute to the purchase of a particular piece of real estate and their intention that after their deaths the property would ultimately pass one-half to husband's heirs and one-half to wife's. They married and subsequently took title to the property as joint tenants with rights of survivorship. When husband died, wife attempted to claim the entirety of the property based on joint tenancy to the detriment of husband's heirs. Our court affirmed the district court's holding that the titling of the property did not trump the parties' specific agreement regarding the disposition of the property. 25 Kan. App. 2d at 338.

Here the parties' prenuptial agreement did not specifically contemplate the future purchase of the farm or otherwise contain any provision for the disposition of the farm upon death or dissolution of the marriage. *King* does not support Timothy's contentions.

10

Moreover, Timothy's arguments are contrary to paragraph 4 of the prenuptial agreement which states in relevant part that "all properties acquired while the parties are married shall become the sole property of that party making the acquisition, *unless an express intent to the contrary is manifested*." (Emphasis added.) Even assuming that the payment Timothy made when the farm was acquired came from proceeds of the sale of his "separate" property (the Parallel property was jointly owned at the time of its sale), the fact that the parties titled the farm in joint tenancy constitutes a manifestation of an express intent contrary to Timothy's sole ownership of the property. Because the parties were purchasing the farm with at least some marital assets, they titled it in joint tenancy, and they borrowed against it jointly with each party obligated on the mortgage, it appears to us that the parties acquired it jointly during the marriage. Timothy was not "the sole party making the acquisition" under paragraph 4. The parties made the acquisition. The district court properly determined that the farm constituted joint property.

Finally, we note that Timothy briefly complains that the district court incorrectly calculated a $2,669 reduction to Timothy's Fidelity account and also gave him less credit than he was due for mortgage payments he made while the divorce pended. He has failed to demonstrate, though, that he was awarded less than 50 percent of the total combined assets of the parties. Such calculation errors, if they occurred, are therefore harmless.

Affirmed.

11